Not Reported in F.Supp.2d                                                                                                             Page 1
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Joseph J. RUSSO, Petitioner,
v.
Robert SNYDER, Warden, Delaware Correctional Center and M. Jane Brady, Attorney General of the State of Delaware, Respondents.
**No. Civ.A. 97-442-SLR.**

Jan. 6, 2000.

Joseph J. Russo, petitioner, pro se.
Thomas E. Brown, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for respondents.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

**\*1** Petitioner is an inmate at Delaware Correctional Center in Smyrna, Delaware. (D.I. 1 at 2) On July 28, 1997, petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming ineffective assistance of counsel, the indictment under which he was convicted was invalid, and the victim recanted her testimony. (D.I.1) For the following reasons, the court shall deny petitioner's application. [FN1]

> FN1. Also pending before the court is plaintiff's motion for appointment of counsel (D.I.19), which shall be denied as moot.

II. BACKGROUND

A. Factual Background

Petitioner was convicted by a jury in Delaware Superior Court of two counts of first degree unlawful sexual intercourse, five counts of second degree unlawful sexual contact, and one count of third degree unlawful sexual penetration. (D.I. 1 at 1) At trial the complaining witness, petitioner's stepdaughter and the State's main witness ("the victim"), testified that between February 1989 and December 1992 she repeatedly was sexually abused by petitioner. Said abuse included fondling, the insertion of petitioner's finger in the victim's vagina, and fellatio. At the time of the abuse, the victim was living with petitioner, her mother, and her siblings. According to the victim, in December 1992 she reported the abuse to her mother, who told her not to tell anyone what was happening as the matter could be "handled as a family problem." (D.I. 13, Appellant's Appendix No. 471, 1994 at A5) Although the mother stated she would seek help, nothing was done in response to the reports of abuse. (D.I. 13, Appellant's Appendix No. 471, 1994 at A5-A6) In February 1993, Delaware Child Protective Service ("DCPS") questioned the victim concerning reports of sexual abuse filed by a neighbor, but the stepdaughter denied any abuse in accordance with her mother's instructions. (D.I. 13, Appellant's Appendix No. 471, 1994 at A6, A7)

Following a subsequent episode of abuse, [FN2] the victim reported petitioner's conduct to an adult friend and neighbor, who in turn reported the molestation to DCPS. On August 2, 1993, a New Castle County Police detective interviewed the victim, who confirmed the incidents of abuse.

> FN2. Petitioner stuffed a dollar bill down the victim's blouse ostensibly to impress upon her the fact that her clothes were "trashy looking." (D.I. 13, State's Appendix No. 458, 1996 at B32-33) According to petitioner, this action was not "meant [to be] sexual." (D.I. 13, State's Appendix No. 458, 1996 at B33)

On August 5, 1993, petitioner turned himself in to the New Castle County Police. (D.I. 13, Appellant's Appendix No. 471, 1994 at A26) After petitioner was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

read his *Miranda* [FN3] rights, he signed a *Miranda* Warning Form and then proceeded to make a taped statement wherein he admitted to many acts of sexual abuse but denied that fellatio had occurred. (D.I. 13, Appellant's Appendix No. 471, 1994 at A27-A32 and State's Appendix No. 458, 1996 at B20-B37) Petitioner was arrested immediately after completing his statement. (D.I. 13, Appellant's Appendix No. 471, 1994 at A32)

> FN3. *See Miranda v. Arizona,* 384 U.S. 436 (1966).

After making her disclosure to the police, the victim was placed in a shelter for abused children. She later was placed in a foster home and ultimately united with her natural father. [FN4] During the fifteen months between petitioner's arrest and trial, the victim's mother rarely contacted her and when she did it was to pressure the victim to recant her accusations, particularly those concerning the acts of fellatio. (D.I. 13, Appellant's Appendix No. 471, 1994 at A8, A9, A22) As a result, the victim was made to feel unwanted and as if she had done something wrong. (D.I. 13, Appellant's Appendix No. 471, 1994 at A8)

> FN4. Until December 1992, the victim had believed petitioner to be her natural father, not her stepfather. (D.I. 13, State's Appendix no. 458, 1996 at B35)

### B. Procedural Background

**\*2** Following his conviction, petitioner was sentenced to life in prison plus forty (40) years, to be served consecutively. (D.I. 1 at 1) On direct appeal, the Delaware Supreme Court affirmed petitioner's conviction and sentence on November 27, 1995. *See Russo v. State,* No. 471, 1994 (Del. Nov. 27, 1995). On July 12, 1996, petitioner filed a motion for a new trial in the Delaware Superior Court. *See State v. Russo,* 700 A.2d 161 (Del.Super.Ct.1996). In his motion, petitioner argued that he was entitled to a new trial, or in the alternative an evidentiary hearing, on the grounds of (1) the alleged recantation of the victim's testimony, [FN5] and (2) ineffective assistance of trial counsel. *See id.* at 163. In support of this later claim, petitioner argued that counsel

> FN5. The victim's notarized affidavit provides as follows:
> *Affidavit of Christi Garber*
> I, Christi Garber, swear the following statements are made under the penalty of perjury:
> 1. That I am Christi Garber, eighteen years of age, daughter of Marti Russo, and Stepdaughter of Joseph Russo.
> 2. That I reported a crime committed against myself by Joseph Russo to the police, and that this alleged crime never really occurred.
> 3. That I reported this crime when I was 15 years of age. When filing this police report, I was coerced into doing so by my neighbor, who was giving me drugs and alcohol.
> 4. That I called the prosecutor, Mr. O'Neill, before the trial of State v. Russo, and told him that I was not willing to testify against Joseph Russo because the allegations were false.
> 5. That I was told during this conversation by Mr. O'Neill that I was going to testify to what he told me or else he would put me in jail.
> 6. That the Prosecutor, Mr. O'Neill, did willfully coerce me to perjure myself at trial and falsely testify against Mr. Russo to get a conviction.
> 7. That I am now ready to face any consequences of my actions as a minor in allowing Mr. O'Neill to coerce me in to committing perjury in the trial of *State v. Russo.*
> (D.I.2, Ex. A)

(1) failed to acquire the documents which would have substantiated [his] claim that he had taken prescription medication on the morning he gave his statement to Detective Hinson, (2) failed to pursue suppression of [his] statement based on lack of voluntariness, (3) withdrew the suppression motion without consulting

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 3
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

[him], (4) should have moved to suppress the testimony of Deputy Deupree "as being hearsay and vindictive," and (5) generally failed to provide adequate representation.
*Id.* at 173. After a detailed review of the issues, the Superior Court denied petitioner's motion on October 8, 1996. *See id.* at 179-80.

Petitioner subsequently filed an appeal of the Superior Court's denial with the Delaware Supreme Court. (D.I.13) In his opening brief filed in support of his appeal, petitioner again argued that he was entitled to a new trial on the ground that the victim had filed an affidavit recanting her trial testimony. (D.I. 13, Appellant's Opening Brief No. 458, 1996 at 1-2) In addition, he argued for the first time that the Superior Court lacked jurisdiction because the indictment was invalid. (D.I. 13, Appellant's Opening Brief No. 458, 1996 at 3) In his reply to the State's answering brief, petitioner subsumed within his claims relating to the validity of the indictment a claim of ineffective assistance of counsel. (D.I.15) Petitioner's ineffective assistance of counsel claim was premised upon (1) an allegedly prejudicial statement made by defense counsel during closing arguments, (2) trial counsel's failure to contest the validity of the indictment, and (3) the substitution of new counsel at sentencing. (D.I.15) On April 17, 1997, the Delaware Supreme Court affirmed the Superior Court's denial of petitioner's motion "on the basis of, and for the reasons set forth in, the decision of the Superior Court dated October 8, 1996." *Russo v. State,* 694 A.2d 48, No. 458, 1996, 1997 WL 317381 (Del. April 17, 1997) (unpublished opinion).

On July 28, 1997, petitioner filed a *pro se* petition in this court, requesting a writ of habeas corpus under 28 U.S.C. § 2254. (D.I.1) He alleges as grounds for relief the following claims: (1) ineffective assistance of counsel at trial; (2) the invalidity of the indictment; and (3) the victim's recantation of her testimony. (D.I.1)

### III. STANDARD OF REVIEW

**\*3** The federal habeas corpus statute, 28 U.S.C. § 2254, provides that a district court will consider a petition for a writ of habeas corpus presented by an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which amended the standard of review applied to state court judgments in § 2254 proceedings. Since petitioner filed his habeas petition on July 28, 1997, following the enactment of the AEDPA, the court will apply the amended standards set forth in the AEDPA to petitioner's claims for federal relief. *See Lindh v. Murphy,* 521 U.S. 320, 326-27 (1997).

The AEDPA prohibits district courts from granting a habeas petition for any claim heard on the merits at the state level unless such previous adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1)-(2). The Third Circuit has explained that this language mandates a two-part inquiry:

[F]irst, the federal court must inquire whether the state court decision was "contrary to" clearly established federal law, as determined by the Supreme Court of the United States; second, if it was not, the federal court must evaluate whether the state court judgment rests upon an objectively unreasonable application of clearly established Supreme Court jurisprudence.

*Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 880 (3d Cir.1999).

Additionally, the AEDPA requires federal courts to pay increased deference to the factual findings and legal determinations made by state courts. *See Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996) (finding amended § 2254 to be a "more deferential test" with respect to state courts' legal and factual findings). As in the original § 2254(d), the amended § 2254(e) directs federal courts to presume state courts' factual findings are correct. *See* 28 U.S.C. § 2254(e)(1). However, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

amended § 2254(e) goes further, requiring the petitioner to rebut that presumption by clear and convincing evidence. *See id.* With these precepts in mind, the court now turns to an analysis of petitioner's claims.

### IV. DISCUSSION

#### A. Exhaustion Requirement

Before it can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. *See* 28 U.S.C. § 2254(b)(1)(4). Recognizing that principles of federal-state comity must restrain unnecessary "[f]ederal intrusions into state criminal trials," *Engle v. Isaac,* 456 U.S. 107, 128 (1982), the Supreme Court has held that the exhaustion requirement must be "rigorously enforced," *Rose v.. Lundy,* 455 U.S. 509, 518 (1982). *See also Santana v. Fenton,* 685 F.2d 71, 77 (3d Cir.1982). If a § 2254 petition includes an unexhausted claim, it "must be dismissed without prejudice for failure to exhaust all state created remedies." *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996).

**\*4** To exhaust state remedies, a petitioner must have raised the factual and legal premises behind his claims for relief in the highest state court before proceeding to federal court. *See Chaussard v. Fulcomer,* 816 F.2d 925 (3d Cir.1987); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986).
"It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

*O'Halloran v. Ryan,* 835 F.2d 506, 508 (3d Cir.1987) (citations omitted). "A petitioner who has raised an issue on direct appeal, however, is not required to raise it again in a state post conviction proceeding." *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997) (citing *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230 (3d Cir.1992)).

As long as the petitioner's claims have been "fairly presented" they are considered exhausted. *Id.* The "petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts asserted in his federal habeas petition." *Doctor,* 96 F.3d at 678. "The state courts[, however,] need not discuss or base their decisions upon the presented claims for those claims to be considered exhausted." *Id* . (citing *Picard v. Connor,* 404 U.S. 270, 275 (1971)). Nonetheless, "[t]he exhaustion requirement is excused where no available state corrective process exists or the particular circumstances of the case render the state process ineffective to protect the petitioner's rights." *Lambert,* 134 F.3d at 513 (citing 28 U.S.C. §§ 2254(b)(1)(B)(I) and (ii)).

Petitioner currently has three claims before this court: (1) ineffective assistance of counsel at trial and sentencing; (2) invalidity of the indictment; and (3) the victim's recantation of her trial testimony. (D.I.1) The latter two claims were raised before the Delaware Supreme Court in petitioner's appeal of the Superior Court's denial of his motion for a new trial. Thus, petitioner exhausted his state remedies with respect to these claims . [FN6]

> FN6. The court notes in this regard that the State argued to the Delaware Supreme Court that petitioner's claim concerning the validity of the indictment was barred by Delaware State Supreme Court Rule 8 because petitioner failed to present it first to the Superior Court. (D.I. 13, State's Answering Brief No. 458, 1996 at 8) The Delaware Supreme Court affirmed the Superior Court's denial of petitioner's motion on the basis of, and for the reasons set forth in, the Superior Court's October 1996 decision. *See Russo,* 1997 WL 317381. The Superior Court's decision did not address the validity of the indictment.

Petitioner has not exhausted his state remedies,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 5
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

however, with respect to his ineffective assistance of counsel claim. In his complaint to this court, petitioner alleges he was denied effective assistance of counsel in four respects: (1) counsel made prejudicial remarks in his closing arguments; (2) counsel failed to adequately prepare for petitioner's defense at trial; [FN7] (3) counsel failed to oppose the entry into evidence of petitioner's redacted taped statement; and (4) "substitute" counsel was inadequately prepared at sentencing. (D.I.2) Only three of these grounds were included in the briefing to the Delaware Supreme Court as part of plaintiff's appeal of the Superior Court's denial of his motion for a new trial: (1) counsel's alleged prejudicial remark made during closing arguments that petitioner "knows he is guilty of molestation"; (2) counsel's failure to contest the validity of the indictment; and (3) "substitute" counsel's lack of preparedness at sentencing. (D.I.14)

> FN7. Specifically, petitioner contends that counsel failed: (1) to investigate the background and ascertain the credibility of one of the prosecution's witnesses; (2) to call petitioner's wife as a witness; (3) to present evidence pertaining to petitioner's mental and physical condition at the time he gave his taped statement; (4) "to point out to the jury the instances of contradiction and inconsistency in the testimony of" a prosecution witness; and (5) to contest the validity of the indictment. (D.I.2)

*5 A review of the record reveals that although petitioner mentioned these three particular grounds of ineffectiveness in his briefing to the Delaware Supreme Court he did not "present" his claim of ineffective assistance of counsel to the state courts for review. These three particular grounds were not asserted as part of petitioner's claim of ineffective assistance of counsel submitted to the Superior Court for review as part of his motion for a new trial. *See Russo,* 700 A.2d at 173. Rather, these grounds of ineffectiveness were first asserted to the Delaware Supreme Court as part of petitioner's appeal of the Superior Court's decision. (D.I.15) Petitioner, however, discussed counsel's ineffectiveness in his reply brief submitted to the Delaware Supreme Court in the context of his argument concerning the validity of the indictment. (D.I.14) Petitioner's ineffective assistance of counsel claim, as premised upon these three grounds, therefore, was not fairly presented to the Delaware Supreme Court as it was not properly developed for disposition. Moreover, under Delaware case law plaintiff's failure to raise the claim of ineffective assistance of counsel in his opening brief constitutes waiver of the claim on appeal. *See Murphy v. State,* 632 A.2d 1150, 1152 (Del.1993). Furthermore, pursuant to Delaware Supreme Court Rule 8, [FN8] a claim may not be raised for the first time on appeal. Thus, plaintiff was barred from raising these grounds of ineffectiveness in his appeal as he had not raised them to the Superior Court in his motion for a new trial. Consequently, with respect to his ineffective assistance of counsel claim, petitioner has failed to carry his burden of demonstrating that the claim was "fairly presented" to the highest state court empowered to consider it. *See Lambert,* 134 F.3d at 513.

> FN8. Delaware Supreme Court Rule 8 provides that "[o]nly questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."

Federal habeas review of petitioner's ineffective assistance of counsel claim, therefore, is barred. Nevertheless, since Superior Court Criminal Rule 61(i)(1), (2), and (3) [FN9] forecloses petitioner from seeking post conviction remedies in the Delaware courts, he is excused from the exhaustion requirement. *See Teague v. Lane,* 489 U.S. 288, 297-98 (1989) (finding that because "collateral relief would be unavailable to petitioner," "fundamental fairness" required that the exhaustion requirement be deemed fulfilled). Notwithstanding this waiver, a district court is precluded from considering a procedurally barred claim unless a petitioner can demonstrate (1) both "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 6
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. To show cause, the petitioner must demonstrate that "something external to the petitioner, something that cannot fairly be attributed to him" impeded efforts to comply with the State's procedural rule. *Id.* at 753. If a petitioner is successful in establishing cause, he can demonstrate prejudice by illustrating that errors at trial " 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Murray v. Carrier,* 477 U.S. 478, 494 (1986) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)). Alternatively, a petitioner can demonstrate that in the interest of justice the court should excuse the procedural default and that failure to do so would affect a "miscarriage of justice." *Id.* at 496. This exception applies only in "extraordinary case[s]." *Id.* at 496. To establish a miscarriage of justice, the petitioner must demonstrate "by clear and convincing evidence that, but for [the asserted] constitutional error, no reasonable juror would have found the petitioner eligible for the ... penalty under the applicable state law." *Sawyer v. Whitley,* 505 U.S. 333, 336 (1992). In the case at bar, petitioner does not allege either cause for or prejudice resulting from his procedural default. Furthermore, there is no evidence demonstrating that failure to consider this claim will result in a fundamental miscarriage of justice. Accordingly, petitioner is procedurally barred from raising his ineffective assistance of counsel claim.

> FN9. A motion for post conviction relief may be filed more than three years after the judgment of conviction is final if it asserts a "retroactive applicable right that is newly recognized after the judgment of conviction is final and is filed not more than three years after the right is recognized by the Supreme Court of Delaware or by the United States Supreme Court." Delaware Superior Court Criminal Rule 61(i)(1). This exception is inapplicable to the present case.

### B. Validity of the Indictment

**\*6** In his second claim, petitioner argues that the indictment was invalid and thus the Superior Court lacked jurisdiction. Specifically, petitioner argues that the charges for which he was convicted either do not appear on the indictment or were subject to entry of a *nolle prosequi.* Petitioner's argument, however, is without factual support in the record. The evidence at bar indicates that petitioner was indicted on three separate occasions: August 30, 1993, September 27, 1993, and December 20, 1993. (D.I. 13, State's Appendix No. 458, 1996 at B2-B3; Indictments dated August 30, 1993, September 27, 1993, and December 20, 1993; Notices of Nolle Prosequi dated October 13, 1993, April 4, 1994, and December 2, 1994) The State entered *nolle prosequis* as to the charges in the August and September 1993 indictments, and petitioner was tried in October 1994 pursuant to the December 1993 indictment. (D.I. 13, State's Appendix No. 458, 1996 at B1-B2; Indictments dated August 30, 1993, September 27, 1993, and December 20, 1993; Notices of Nolle Prosequi dated October 13, 1993, April 4, 1994, and December 2, 1994) The record further evidences that the December 1993 indictment on which petitioner was tried contains the charges for which petitioner was convicted. (D.I. 13, Indictment dated December 20, 1993) Despite petitioner's argument to the contrary, although counts 5 through 16 of the December 1993 indictment were subject to an entry of a *nolle prosequi,* [FN10] the counts for which he was convicted were not. (D.I. 13, Notices of Nolle Prosequi dated December 2, 1994) Accordingly, petitioner was indicted on the charges for which he was convicted.

> FN10. After the entry of a *nolle prosequi* with respect to counts 5 through 16, the trial court renumbered the counts of the indictment, redesignating counts 17 through 20 as counts 5 through 8, in order to avoid jury confusion. *See Russo,* 700 A.2d at 163 n. 1; D.I. 15. Despite petitioner's argument to the contrary, the renumbering of the counts did not invalidate the indictment.

Petitioner also argues that changes to the indictment with respect to the dates of the alleged offenses

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 7
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

violated his due process rights. Specifically, petitioner alleges that the "[c]hanges denied prospects of an alibi defense. These changes were made upon realization that [petitioner], and [the] alleged victim, were not residents of the State of Delaware during the time originally alleged in the charges." [FN11] (D.I.2) Petitioner's allegation of prejudice is not supported by the record. According to his statement to Detective Hinson, petitioner moved to Delaware in 1989. (D.I. 13, State's Appendix No. 458, 1996 at B20, B24) Therefore, he was a resident during the period of time initially set forth in the indictment. Moreover, according to Superior Court Criminal Rule 7(c) an "indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Under Delaware law, the exact time when an offense occurred is not an essential element of the charged offense. *See Phipps v. State,* No. 105, 1995, Hartnett, J. (Del. Feb. 16, 1996) (ORDER) (holding that the state provided the defendant with sufficient notice by alleging a reasonable time frame within which the offense occurred); *Monastakes v. State,* 127 A. 153, 154 (Del.1924) (stating that "in a criminal prosecution the state is not bound to prove the precise date laid in the indictment, it being sufficient if the evidence shows the alleged offense to have been committed at any time within the period mentioned by the applicable statute of limitations if any"); *State v. Husser,* No. 90005314, 1990 WL 161226, at *2 (Del.Super.Ct. Oct. 12, 1990) ("Delaware Courts have repeatedly held that the date alleged in an indictment is immaterial where the date is not an essential element of the crime, if it is proven to the satisfaction of the trier of fact that the offense was committed within the period of limitations ."); *State v. Moore,* No. 9707004740, 1998 WL 283449, at *1 & n. 5 (Del.Super.Ct. Jan. 14, 1998) "(It has been held that the date alleged in an indictment is immaterial, where the date is not an essential element of the crime, if it is proven to the satisfaction of the trier of fact that the offense was committed within the period of limitation prior to the finding of the indictment. Additionally, State Courts have liberally allowed amendment of the dates contained in an indictment, believing such changes to be one of form and not substance so long as the defendant's substantial rights were not prejudiced."). This is particularly true where the victim is a child and the alleged crime is one of sexual abuse; in such an instance, the State is required only to specify a "reasonable time frame" within which the offense allegedly occurred. *See Phipps,* No. 105, 1995 (stating that "[i]n cases where a child victim is unable to recall the exact date of the crime, the State need only give a "reasonable time frame" within which the offense allegedly occurred.... Leeway is particularly essential in cases involving child sexual abuse because of the child victims' frequent inability to fix an exact time of the offense."); *Moore,* 1998 WL 283449, at *1 ("Furthermore, child victims cannot be expected to remember the specific dates of the alleged offenses with specificity. Therefore, the State's failure to include the specific dates of the alleged offenses is not fatal to the indictment against Defendant and has nether prejudiced nor impeded his preparation for trial.") (footnote omitted). In the instant action, the indictment concisely stated the "essential facts" of the offenses charged. As such, the indictment was sufficient to inform the petitioner of the charges against him, to permit him reasonable opportunity to prepare a defense, and to shield him against subsequent prosecution for the same offenses. The record further reflects that the contested date changes were approved by his counsel on the record at trial. (D.I. 2 at 14-15, 18-19) Accordingly, the court finds that the record evidences no reason for finding the indictment invalid. Therefore, petitioner's claim as it relates to the sufficiency of the indictment fails on the merits.

> FN11. The December 1993 indictment initially indicated with respect to the offenses charged in counts 1 through 4 that the conduct occurred between August 1988 and November 1990. (D.I. 13, Indictment dated December 20, 1993) This time frame was changed to read "February 24, 1989 to Dec [ember] 1992." (D.I. 13, Indictment dated December 20, 1993) With respect to counts 5 through 8 the time frame remained, as it had initially been provided, "between February 24, 1989 and December 1992." (D.I. 13, Indictment dated December 20, 1993)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 8
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### C. The Victim's Recantation

***7** In his final claim, petitioner contends that the victim, his stepdaughter, has recanted her testimony against him. (D.I. 2 at 20-21) He further alleges that the victim presented perjured testimony due to prosecutorial misconduct, i.e., the prosecutor coerced and threatened the victim into testifying as she did. (D.I. 2 at 20) Applying the standard set forth in Superior Court Criminal Rule 33 [FN12] and the three-part analytical analysis set forth in *Larrison v. United States,* 24 F.2d 82, 87-88 (7th Cir.1928), [FN13] the state courts rejected petitioner's motion for a new trial based on the recantation of a material witness. *See Russo,* 700 A.2d at 173. In so finding, the state courts determined that the recantation submitted by petitioner was "wholly lacking in credibility." *Id.* at 172. The courts based their finding on (1) the credibility of the victim's testimony at trial, (2) the corroborative evidence presented at trial, including petitioner's taped statement wherein he acknowledged sexually molesting his stepdaughter, and (3) the pressure exerted on the victim by her family, particularly her mother, to retract her testimony. *See id.* at 164-73. In light of the fact that this court has "no license to redetermine the credibility of witnesses whose demeanor has been observed by the state trial court, but not by [it]," *R.C. Marshall v. Lonberger,* 459 U.S. 422, 434 (1983), these findings of fact are fairly supported by the record. Petitioner does not point to any evidence clearly establishing that the Superior Court's findings were in error.

> FN12. Superior Court Criminal Rule 33 provides in relevant part that "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice.... A motion for a new trial made on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case."

> FN13. In *Larrison,* the Seventh Circuit stated that a new trial should be granted when, (a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury might have reached a different conclusion.
> (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.
> *Larrison,* 24 F.2d at 87-88. The Delaware Supreme Court has adopted the *Larrison* test when considering a motion for a new trial based upon recantation. *See, e.g., Blankenship v. State,* 447 A.2d 428, 433 (Del.1982); *Robinson v. State,* No. 149, 1995, 1996 WL 697797, at *4 (Del. Jan. 29, 1996). In contrast, the Third Circuit has not adopted explicitly the *Larrison* test. *See Government of the Virgin Islands v. Lima,* 774 F.2d 1245, 1251 n. 4 (1985). Nonetheless, the Third Circuit has applied the *Larrison* test when assessing a motion for a new trial based upon the recantation of perjured testimony. *See United States v. Massac,* 867 F.2d 174, 178-79 (3d Cir.1989); *United States v. Meyers,* 484 F.2d 113, 116-17 (3d Cir.1973). When considering a request for a grant of a new trial on the ground of newly discovered evidence generally, the Third Circuit has applied the *"Berry"* test, which sets forth five requirements that must be met before a court can order a new trial:
> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.
> *See, e.g., United States v. Herman,* 614 F.2d 369, 371 (3d Cir.1980); *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir.1976).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

The court notes that petitioner does not allege that he is innocent, but rather that the newly acquired evidence, i.e., the recanted testimony, probably would produce an acquittal on retrial. The state court found, in addressing this issue, that

[e]ven if a jury were to hear the contents of [the victim's] recantation as contained in her affidavit, the same result would no doubt be reached. [The victim's] October 1994 trial testimony would be available for the jury's evaluation. Her statements to Detective Hinson and social workers would also come in....

*Russo,* 700 A.2d at 173-74. With respect to petitioner's allegation that the victim's testimony was elicited through prosecutorial coercion, the state courts' stated that denial of petitioner's motion for a new trial was not based upon a finding of an absence of prosecutorial misconduct:Rather, the motion is denied based on the Court's finding that the recantation was not credible in light of [the victim's] credibility at trial, and the substantial corroborative evidence presented, most notably in [petitioner's] lengthy statement to Detective Hinson.

*Id.* at 179. Paying the increased deference required by AEDPA to the factual findings and legal determinations made by the state courts, the court concludes that the Superior Court's findings are fairly supported by the record. The court further determines that petitioner has failed to establish by clear and convincing evidence that the factual determinations by the state court were erroneous. In light of the state courts' findings, the court concludes that petitioner has not carried his burden in demonstrating that the State knowingly elicited perjured testimony. [FN14] Accordingly, the Delaware state courts' rejection of this claim post conviction was not an unreasonable application of clearly established federal law and was not based on an unreasonable application of the facts. Therefore, petitioner's claim based upon the victim's recantation fails on the merits.

>   FN14. Petitioner's only support for his allegation of prosecutorial misconduct was the victim's recantation, which the state courts found not to be credible.

### V. CONCLUSION

**\*8** For the foregoing reasons, the court concludes that petitioner's request for habeas relief filed pursuant to 28 U.S.C. § 2254 lacks merit. Therefore, petitioner's application for federal habeas relief shall be dismissed and the writ denied. Furthermore, the court finds no basis for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

D.Del.,2000.  
Russo v. Snyder  
Not Reported in F.Supp.2d, 2000 WL 52158 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.